UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**NICHOLAS K. KARELLAS,**              Chapter 7
    Debtor                           Case No. 08-12451-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

## I. INTRODUCTION

Two motions filed by Nicholas K. Karellas (the "Debtor") are before the Court: a "Motion to Stay Section 341 Meeting and to Rescind Order Requiring the Debtor to Turnover Rental Income to the Trustee and for Order Requiring the Trustee to Disgorge Rental Monies now being Held by the Trustee for Payment of Mortgage" (the "Motion to Stay and Rescind"), and a "Motion for Expedited Hearing." The Chapter 7 Trustee, Joseph Braunstein (the "Trustee"), objects to the Motion to Stay and Rescind. For the reasons set forth below, the Court denies both Motions.

## II. BACKGROUND

The Debtor filed a voluntary Chapter 7 petition on April 3, 2008. The United States Trustee scheduled the meeting of creditors pursuant to 11 U.S.C. § 341(a) for May 9, 2008 at 1:00 p.m. *See* 11 U.S.C. § 341(a). On April 18, 2008 the Debtor filed his Schedules and Statement of Financial Affairs, as well as Official Form 22A. On Schedule A-Real Property, the Debtor disclosed that he owned real estate, including an apartment building in Allston,

1

Massachusetts.

On May 9, 2008, the date of the first schedule section 341 meeting, the Debtor filed a "Notice of Continued Sec. 341 Meeting" in which he advised that the meeting had been continued until July 2, 2008 at 1:00 p.m.

On May 21, 2008, the Trustee file a "Motion to Compel the Debtor to Cooperate with the Trustee and Turnover to the Trustee Certain Assets of the Bankruptcy Estate" (the "Motion to Compel"). Specifically, the Trustee requested that the Debtor be directed to cooperate with him and turnover postpetition rental income generated from a six-unit apartment building located at 76 Easton Street, Allston, Massachusetts (the "Allston property"). The Trustee also requested sanctions against the Debtor. According to the Trustee, on April 23, 2008, he contacted Debtor's counsel by telephone and in writing, advising him that the Debtor should not be using rents from the Allston property until further notice and requesting from Debtor's counsel copies of insurance policies for the Allston property, as well as other properties owned by the Debtor located at 24 Pine Street, Belmont, MA and 65-67 Derby Street, Newton, MA. Although the Trustee noted in his Motion to Compel that the Debtor's attorney had alluded to a refinancing of the Allston property, the Trustee averred that because rents from the Allston property are not exempt from property of the estate, as trustee he was obligated to administer them for the benefit of creditors.

On May 22, 2008, the Debtor filed a "Motion to Dismiss Chapter 7 Proceeding." In his Motion, he represented that he had secured "consolidated financing sufficient to satisfy

2

each and every Creditor to the extent of 100% of their Claims, whether secured or unsecured." In particular, he represented that he had been able to obtain financing that would satisfy an obligation to his former spouse in the sum of $258,000, which was secured by a lien on his income producing property in Allston.

The Court heard the Trustee's Motion to Compel and the Debtor's Motion to Dismiss on May 28, 2008. The Court granted the Trustee's Motion and denied the Debtor's Motion, ordering the Debtor to "forthwith turnover to the Trustee all rents collected since the petition date." Although the Court ruled that the Debtor did not have the right to dismiss his Chapter 7 case, the Court observed at the hearing that the Debtor could convert his case to Chapter 11 or Chapter 13 if he wished to reorganize his financial affairs.

The Debtor took no action with respect to the conversion of his case from Chapter 7 to either Chapter 11 or Chapter 13 for over one month. On July 1, 2008, however, he filed a Motion to Convert from Chapter 7 to Chapter 13. In view of the Supreme Court's decision in Marrama v. Citizens Bank of Massachusetts, __U.S.__, 127 S.Ct. 1105, 1112 (2007), the Court held the Motion to afford the Chapter 7 Trustee an opportunity to respond. The next day, the Trustee filed an objection to the Debtor's Motion to Convert, noting that the Debtor failed to appear at the July 2, 2008 rescheduled meeting of creditors, which was attended by at least one creditor, and that, therefore, the Debtor had not yet been examined under oath with respect to his assets and liabilities. In his Objection, the Trustee observed that he believed that the amended schedules filed by the Debtor were inaccurate and that the Debtor had not responded to his request to turnover July rents from

3

the Allston property.

On July 3, 2008, after the rescheduled the meeting of creditors, the Debtor, with the assistance of new counsel, filed the Motion to Stay and Rescind in which he asserted that "the role of the Chapter 7 Trustee in this case is dispensable and detrimental to the rehabilitation of the Debtor."

## III. DISCUSSION

In Marrama, the Supreme Court interpreted the language of 11 U.S.C. § 706(a) ("The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable."). It stated:

> The class of honest but unfortunate debtors who do possess an absolute right to convert their cases from Chapter 7 to Chapter 13 includes the vast majority of the hundreds of thousands of individuals who file Chapter 7 petitions each year. Congress sought to give these individuals the chance to repay their debts should they acquire the means to do so. Moreover, as the Court of Appeals observed, the reference in § 706(a) to the unenforceability of a waiver of the right to convert functions "as a consumer protection provision against adhesion contracts, whereby a debtor's creditors might be precluded from attempting to prescribe a waiver of the debtor's right to convert to chapter 13 as a non-negotiable condition of its contractual agreements." 430 F.3d, at 479.
>
> A statutory provision protecting a borrower from waiver is not a shield against forfeiture. Nothing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor. On the contrary, the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate "to prevent an abuse of process" described in § 105(a) of the Code, is surely adequate to

4

> authorize an immediate denial of a motion to convert filed under § 706 in
> lieu of a conversion order that merely postpones the allowance of equivalent
> relief and may provide a debtor with an opportunity to take action
> prejudicial to creditors.

127 S.Ct. At 1111-112 (footnotes omitted).  The Court also observed:

> We have no occasion here to articulate with precision what conduct qualifies
> as "bad faith" sufficient to permit a bankruptcy judge to dismiss a Chapter
> 13 case or to deny conversion from Chapter 7. It suffices to emphasize that
> the debtor's conduct must, in fact, be atypical. Limiting dismissal or denial
> of conversion to extraordinary cases is particularly appropriate in light of the
> fact that lack of good faith in proposing a Chapter 13 plan is an express
> statutory ground for denying plan confirmation. 11 U.S.C. § 1325(a)(3) . . . .

Id. at 1111 n.11.

The decision in Marrama limits a debtor's right to convert from Chapter 7 to

Chapter 13 to permit inquiry into his or her good faith. The Supreme Court recognized the

futility of permitting conversion if a case is likely to be reconverted because of the debtor's

inability to propose a plan in good faith. See 11 U.S.C. § 1325(a)(3).

The record in this proceeding reflects an absence of good faith on the part of the

Debtor. Section 521 of the Bankruptcy Code specifies the debtor's duties. Among those

duties is the duty to "cooperate with the trustee as necessary to enable the trustee to

perform the trustee's duties under this title," and the duty to "surrender to the trustee all

property of the estate." 11 U.S.C.§ 521(a)(3), (a)(4). Additionally, the debtor has the duty

to attend the meeting of creditors and submit to an examination under oath. See 11 U.S.C.

§ 341(a); Interim Fed. R. Bankr. P. 2003(b)(1).

The record of proceedings in this case, which the Debtor does not and cannot

dispute, unequivocally establishes that he failed to appear at the section 341 meeting of

5

creditors and failed to promptly turnover property of the estate. The Debtor voluntarily filed a Chapter 7 petition. While he may now regret that decision, he was required to cooperate with the Trustee until such time the Court ruled on his Motion to Convert. In view of the Supreme Court's decision in <u>Marrama</u> and this Court's order of May 28, 2008, the Court did not grant the Debtor's Motion to Convert on the day it was filed. Accordingly, the Debtor was obligated to attend the section 341(a) meeting of creditors. He did not. His conduct reflects disdain for his responsibilities as a debtor and disrespect for the duties and responsibilities of the Chapter 7 Trustee. *See* 11 U.S.C. § 704. Under these circumstances, the Court finds that the Debtor's conduct exhibits bad faith. Accordingly, the Court shall not schedule a hearing on the Debtor's Motion to Convert until such time as the Debtor attends the section 341(a) meeting and turns over to the Trustee all rents which constitute property of the estate. The Trustee and the Debtor's creditors are entitle to an opportunity to assess the integrity of the Debtor's schedules and statement of financial affairs with reference to the provisions of 11 U.S.C. § 727(a) and to assess whether liquidation or reorganization is in their best interests. The Debtor's conduct has thwarted those assessments.

**IV. CONCLUSION**

In view of the foregoing, the Court shall enter and order denying the Motion for Expedited Determination and the Motion to Stay and Rescind.

By the Court,

6

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: July 9, 2008
cc: Joseph Braunstein, Esq., Harvey Alford, Esq., David T. Fulmer, Esq., U.S. Trustee